IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>One Apple iPhone Belonging to Prasad Margabandhu, currently in secure custody at the Allegheny County Jail, 950 Second Avenue, Pittsburgh, PA 15219 | Magistrate No. 24-1068<br><br>[UNDER SEAL] |

**AFFIDAVIT IN SUPPORT OF**
**APPLICATION FOR A SEARCH WARRANT**

I, Jared L. Berken, being first duly sworn, hereby depose and state as follows:

## I.      INTRODUCTION AND AGENT BACKGROUND

1.      I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. As a federal law enforcement officer, I am authorized to investigate violations of laws of the United States, including the crimes outlined herein, and am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

2.      I am a Special Agent ("SA") with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") having been so employed for approximately two and a half years. As a Special Agent, I have received training in federal firearms, arson, and explosive laws and regulations at the ATF National Academy and Federal Law Enforcement Training Center's Criminal Investigator Training Program. This training lasted for over six months and covered topics including federal criminal statutes, interviewing and interrogation techniques, arrest procedures, search and seizure, narcotics,

undercover techniques, search warrant applications, and various other investigative techniques. I regularly refer to state and federal firearms and arson laws and regulations during the course of my duties. Prior to my employment with ATF, I was a Patrol Officer for the Aberdeen Police Department in the State of Washington for approximately four years as well as a Patrol Deputy for the Grays Harbor County Sheriff's Office in the State of Washington for approximately eleven months. During this time I made several hundred arrests, based on both warrants and newly developed probable cause, leading to convictions for various offenses including felony and misdemeanor crimes of violence, firearms violations, drug law violations, and traffic violations. Additionally, I have served as a commissioned officer in the United States Army Reserve since 2013, where I currently hold the rank of Captain. In 2018, I graduated from the U.S. Army's Military Intelligence Basic Officer Leadership Course at Ft. Huachuca, Arizona. In 2022, I graduated from the U.S. Army John F. Kennedy Special Warfare Center and School's Civil Affairs Captain's Career Course ranked 6 of 46 students at Ft. Bragg, NC.

3.      As a Special Agent with the ATF, I have experience in and am responsible for investigating violations of federal firearms, arson, and drug laws. In the course of my training and experience, I have become familiar with the methods and techniques associated with the possession and distribution of firearms and drugs, and the organization of firearms and drug conspiracies. I have also become familiar with methods for setting fires and motives for doing so. In the course of conducting these investigations, I have been involved in the use of the following investigative techniques: interviewing informants/cooperating witnesses, conducting physical surveillance, consensual monitoring and recording of both telephonic and non-telephonic communications, conducting court-authorized wire and oral

interception electronic surveillance, and preparing and executing search/arrest warrants which have led to substantial seizures of narcotics, firearms, contraband, and evidence of criminal activity.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 USC § 844(i) (Arson of Property in Interstate Commerce), 18 USC § 844(n) (Conspiracy to Commit Arson), and 18 USC § 1341 (Mail Fraud) have been committed, and that here is also probable cause to search the items described in Attachment A for evidence, instrumentalities, contraband, or fruits of this crime.

6. I am aware that evidence of federal crimes, including arson, firearm, and drug crimes, can often be found in electronic media, including cellular telephones. Such evidence can be found throughout a cellular telephone, such as in text messages, contact lists indicating the names and numbers of associates, call/text logs indicating calls/texts made to and received from associates, online search history files, and photograph and video gallery files. It should be noted that, with the advance of technology, the distinction between computers and cellular telephones has quickly become less clear. Actions such as internet searching or emailing, in addition to calling and text messaging and photographing, can now be performed from many cell phones. The particular numbers of, and the particular numbers dialed by,

particular cellular telephones can be evidence of criminal activity. Such numbers can confirm identities of particular associates and the occurrence of certain events.

7.   As with most electronic/digital technology items, communications made from an electronic device, such as a cellular telephone or a standard computer, are often saved or stored on the device. Storing this information can be intentional, for example, by saving a text message or a contact or an e-mail. Digital information can also be retained unintentionally. Traces of the path of an electronic communication or of an internet search may be automatically stored in many places on a computer or cellular telephone. In addition to electronic communications, a user's internet activities generally leave traces in the web cache and internet history files. A forensic examiner often can recover evidence that shows when and in what manner a user of an electronic device, such as a computer or a cell phone, used such a device. Electronic files or remnants of such files can be recovered months or even years after they have been downloaded, stored, deleted, or viewed.

8.   I am aware that criminals sometimes take trophy photographs and videos using their cellular telephones of their contraband, firearms, and proceeds and retain them on their cellular telephones. I am also aware that such criminals, like law-abiding citizens, sometimes take photographs and videos using their cellular telephones of themselves with their friends, relatives, and associates and keep the photographs on their cellular telephones. When they are taken or retained by criminals, such photographs and videos can be evidence, and can lead to additional evidence, of illegal activity by identifying the perpetrators, contraband, and people who are actively assisting and/or supporting the criminal activity as well as the locations where they live or where they store their contraband, firearms, proceeds, or paraphernalia.

9. I am also aware that cellular phones often include physical location data, indicating where a cellular phone was at a given date and time. This can be beneficial in an investigation by comparing an individual's cellular phone's location data against known significant events and locations pertinent to a criminal investigation; by comparing the location data from a cellular phone against known dates/locations, investigators can determine whether a phone, and thus likely its user/owner, were at a certain location at a certain date and time.

10. In addition to traditional location data, your affiant is aware that cellular phones often retain data regarding which wireless internet (WiFi) networks the cell phone was connected to at certain dates and times; therefore, if a cellular phone contains this information, investigators can attempt to research or verify the physical location of that particular WiFi network/connection, and thus determine the general vicinity of the cellular phone on a particular date and time.

11. I am also aware that the internet search histories of cellular phones often contain evidence of criminal activity. For example, I am aware that it is not uncommon for individuals who commit crimes to then search the internet to determine what, if any, media coverage there is about the crime.

12. I am also aware that cellular phones contain a large amount of data that identifies who is the user of a particular cellular phone. Such data includes text messages, call logs, contacts, social media and email accounts associated with/link to the device, photographs and videos, and other data. Such evidence is the equivalent of "indicia" evidence commonly recovered during searches of residences and vehicles pursuant to search warrants, as it demonstrates or indicates who the user or users of a particular cellular phone

were, much like "indicia" evidence indicates who is the owner, user, or occupant of a residence or vehicle.

13. I am also aware that criminals will often utilize their cellular phones to communicate regarding their criminal activities. These communications can be with friends/associates in which they discuss their criminal activities, as well as coconspirators, to include individuals with whom they share or intend to share proceeds of their crimes.

14. This affidavit is submitted in support of a search warrant for: One Apple iPhone cellular telephone (**TARGET TELEPHONE #1**), including any memory cards ("SIM") that are in the telephone, which is to be seized from the Allegheny County Jail.

15. **TARGET TELEPHONE #1** is currently in the custody of the Allegheny County Jail. As explained below, there is probable cause to conclude that **TARGET TELEPHONE #1** contains evidence of MARGABANDHU's commission of the federal felony offenses listed above.

16. I have personally participated in this investigation by, among other things, reviewing information such as police reports and associated data, interviewing witnesses, serving grand jury subpoenas. In addition, I have discussed this case with, and reviewed the reports of other law enforcement officers, including detectives with the Pittsburgh Bureau of Police, the North Huntingdon Police Department, the Pennsylvania State Police as well as fellow ATF Investigators. This affidavit is being submitted for the specific purpose of supporting a search warrant to search **TARGET TELEPHONE #1**. I have not, therefore, included every fact known to me concerning this investigation.

## II.     PROBABLE CAUSE

17.     The United States is investigating a suspected conspiracy to commit arson and to submit a related fraudulent insurance claim, in violation of the above-referenced federal statutes, within the Western District of Pennsylvania (WDPA). The property which was the subject of the arson and insurance claim was utilized as a rental property and, therefore, should be deemed to be property engaged in and affecting interstate commerce within the meaning of the arson statutes referenced above.

18.     On February 20, 2024, at Criminal No. 24-43, a federal grand jury sitting in the Western District of Pennsylvania returned an indictment charging Prasad MARGABANDHU with, among other charges, violations of 18 U.S.C. §§ 844(i) and (n) relating to a suspected arson committed 1925 East Carson Street, a property believed to be owned by MARGABANDHU.

19.     On February 20, 2024, at Magistrate No. 24-242, the Honorable Kezia O. L. Taylor, United States Magistrate Judge, issued a search warrant for an Apple iPhone belonging to Prasad MARGABANDHU.  The affidavit in support of that search warrant is attached to this affidavit as **Exhibit 1** and is incorporated by reference.  Your Affiant and others executed that warrant following MARGABANDHU's arrest on the above-referenced federal indictment.  Of note, and as related in **Exhibit 1**, Your Affiant believes that MARGABANDHU used the prior cellular telephone that was the subject of that search warrant to conspire to commit the offense that was the subject of the above-referenced indictment.

20.     Following execution of the search warrant on that phone, Your Affiant uncovered evidence of the target offenses.  Types of evidence obtained included but are

7

not limited to notes authored by MARGABANDHU that appeared to be a recollection of an interview by Your Affiant with a witness in the case, chat messages with a non-privileged individual regarding the federal investigation against MARGABANDHU, as well as several previously unknown phone numbers which appeared to belong to MARGABANDHU. As of the submission of this affidavit, Your Affiant is continuing to investigate leads produced from MARGABANDHU's previously seized Apple iPhone.

21. On Saturday, June 29, 2024, MARGABANDHU was arrested by the Ohio Township (PA) Police Department after responding to a shoplifting incident at the Home Depot at 112 Ben Avon Heights Road, Pittsburgh, PA 15237. MARGABANDHU was subsequently transported to the Allegheny County Jail, leading to **TARGET TELEPHONE #1** being in the Jail's custody.

22. On Tuesday June 25th, 2024, the North Huntingdon Police Department (NHPD) responded to a reported structure fire at 14860 Lincoln Highway (State Route 30), Irwin, Pennsylvania (**SUBJECT PROPERTY**). A female motorist passing by alerted law enforcement that she had seen flames coming from the deck of the property on the northwest side of the building. Upon arrival, an NHPD officer was able to extinguish the flames with a fire extinguisher. Subsequent review by Your Affiant of Body Worn Camera (BWC) footage captured audio of responding personnel indicating they had observed what appeared to be a pile of debris on the deck and that they suspected the fire to have been intentionally set.

23. Your Affiant knows MARGABANDHU owns the property at by way of one of his companies, 1318 Carson Street, LLC. On March 23rd, 2023 during an Examination Under Oath (EUO) of MARGABANDHU by a representative of Rockingham

8

Insurance, MARGABANDHU had identified himself as being an owner, along with his brother Sivram Bandhu, of "Rivertowne in North Huntingdon [the **SUBJECT PROPERTY**]. That's owned by 1318 Carson Street, LLC." MARGABANDHU went on to confirm the property was a pub and restaurant. By way of previously obtained e-mails from Insurance Agent Kyle Majerick of Eber and Associates, Your Affiant knows MARGABANDHU attempted to obtain a $1,000,000 policy on the **SUBJECT PROPERTY** in November of 2020, despite it having been condemned by North Huntingdon Township in February of 2020. As of the submission of this affidavit, investigators are pending the receipt of potential additional insurance documentation on the **SUBJECT PROPERTY** from United States Liability Insurance company.

24.     Your Affiant responded to the scene of the fire at the **SUBJECT PROPERTY** while local investigators remained on scene. Your Affiant subsequently observed security cameras on the exterior of the **SUBJECT PROPERTY** at five separate locations and for power to be on at the structure by review of the electric meter on the exterior.

25.     During the investigation at the **SUBJECT PROPERTY**, Your Affiant spoke with North Huntingdon Township Building Inspector / Zoning Officer Tom McGuire. McGuire confirmed the property to have been condemned since 2020 and that the Township had previously received court authorization to demolish the building. McGuire advised that MARGABANDHU and his legal team have been actively fighting the condemnation and demolition of the building and that the process is on hold due to ongoing litigation. MARGABANDHU was most recently in the Township offices in April or May of 2024 and attempted to submit building prints in furtherance of

permitting on the **SUBJECT PROPERTY**. The Township refused to accept the prints citing the ongoing litigation. When Township officials refused to provide MARGABANDHU a written explanation of their refusal to accept the prints, he reportedly became angry and threatened additional legal action.

26. While on scene at the **SUBJECT PROPERTY**, a Gold 2007 Lincoln Navigator (PA License #: MHE-2735) pulled into the parking lot. Your Affiant approached the sole occupant and driver, who identified himself as Derek Hassim. Hassim inquired if investigators on scene were the owners of the building and provided a business card for his company "D&T Home Solutions LLC" with a listed phone number of 412-424-9558. Hassim identified himself as someone who purchases properties that have back taxes owed, are in pre-foreclosure, and those that generally need rehabilitation. When questioned by Your Affiant if Hassim knew who the owner of the building was he replied "I don't know the owner of this building". Hassim proceeded to invite investigators to his new restaurant, Yinz Kitchen in Tarentum, and stated that he offered large discounts to law enforcement.

27. Your Affiant later queried the 412-424-9558 phone number provided by Hassim in MARGABANDHU's previously seized iPhone and noted text messages between the two as recently as February 18th, 2024, four days before MARGABANDHU's arrest, when his prior phone was seized. The contact in MARGABANDHU's phone corresponding to Hassim's number showed that it had been created on October 16, 2020, indicating that Hassim and MARGABANDHU had in fact known each other for over three and a half years. Hassim has a 2017 conviction for possession of a firearm without a license.

28.     Review of MARGABANDHU's previously seized phone also showed a "Derek Hassim Partner" contact card with a listed phone number of 412-727-4981. Your Affiant later determined this number to be associated with a Diante Wilson and, upon review of Wilson's criminal history, noted that he had previously been arrested on state arson charges in 2002.

29.     Based on Your Affiant's training and experience, it is known that individuals involved in arsons and attempted arsons, as well as the corresponding conspiracies, often return to the scene of the crime to check on the status and outcome of their actions. Your Affiant also knows that those same individuals often use their phones to research their crimes and document them during and after the fact. Your Affiant knows that iPhones, such as **TARGET TELEPHONE #1**, provide users the ability to easily transfer and restore historical data between the iCloud and new phone handsets. As such, Your Affiant believes MARGABANDHU's current telephone, **TARGET TELEPHONE #1**, even if different from the handset he possessed at or around the time of the fire at 1925 East Carson Street and the **SUBJECT PROPERTY**, may still contain information of value to investigators.

30.     Your Affiant further believes that MARGABANDHU may have conspired with Hassim, Wilson, or others yet unknown to set the fire at the **SUBJECT PROPERTY** and that evidence of that conspiracy may exist on **TARGET TELEPHONE #1**. Your Affiant believes that this fire, like the prior East Carson Street property arson that is the subject of the indictment at Criminal No. 24-43, may have been set with a financial motivation, particularly considering the imminent demolition of the **SUBJECT PROPERTY** by the town. However, MARGABANDHU's known prior efforts to secure

11

an insurance policy on the **SUBJECT PROPERTY** through Eber and Associates do not appear to have been successful.  As noted above, investigators are still waiting on additional documentation regarding additional efforts to insure the property.  Your Affiant also believes that this fire may have been set with the intention of distracting investigators from MARGABANDHU's involvement with the prior East Carson Street fire, the subject of the pending indictment at Criminal No. 24-43.

31. Based on the foregoing, there is probable cause to believe that a search of the captioned cellular telephone (**TARGET TELEPHONE #1**), to be seized by Investigators from the Allegheny County Jail, will reveal evidence of the violations of 18 USC § 844(i) (Arson of Property in Interstate Commerce), 18 USC § 844(n) (Arson Conspiracy), and 18 USC § 1341 (Mail Fraud) committed by MARGABANDHU.

32. Your Affiant further submits that there is good cause to execute this warrant at any time of day or night.  MARGABANDHU is currently detained at ACJ.  Your Affiant is aware that MARGABANDHU will be released sometime in the early morning of June 30, 2024, likely between 1:00 am and 3:00 am.  Accordingly, Your Affiant intends to execute the proposed warrant, if approved, prior to MARGABANDHU's release.  Your Affiant believes that, if the warrant is not executed before MARGABANDHU's release, MARGABANDHU may delete evidence from **TARGET TELEPHONE #1**.

The above is true and correct to the best of my knowledge, information, and belief.

*/s/ Jared L. Berken*
Jared L. Berken
Special Agent - ATF

Subscribed and sworn before me, by telephone,
pursuant to Fed. R. Crim. P. 4.1(b)(2)(A),
this 29th Day of June, 2024.

_____
THE HONORABLE CHRISTOPHER B. BROWN
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

**Property to be Searched:**

1. One Apple iPhone (**TARGET TELEPHONE #1**), cellular telephone, including any memory cards ("SIM") that are in the telephone to be seized from the Allegheny County Jail.

## ATTACHMENT B

### Evidence to be Searched and Seized:

All records, information, data, and evidence regarding violations of 18 USC § 844(i) (Arson of Property in Interstate Commerce), 18 USC § 844(n) (Arson Conspiracy), and 18 USC § 1341 (Mail Fraud) including evidence of who utilized the Device described in Attachment A (**TARGET TELEPHONE #1**) and when, including:

a. Contact lists, including telephone numbers, names, and images associated with those numbers;
b. Incoming and outgoing call logs;
c. Incoming and outgoing text messages (both SMS and MMS), including draft text messages, chats, Facebook messenger chats and other social media chats and communications;
d. Online searches/search history and sites viewed via internet
e. Photographs;
f. Videos;
g. Sent and received audio files, video files, and image files;
h. Telephone settings, including speed dial numbers and the telephone number for the subject telephone and related identifying information such as the ESN of the telephone;
i. Call forwarding information;
j. Messages drafted but not sent;
k. Metadata and physical location data;
l. Emails sent and received, including emails drafted but not sent;
m. Records/evidence indicating when the Device was powered on and powered off;
n. Navigation, mapping, and GPS files;
o. Emails/email accounts associated with the Device;
p. Social media accounts associated with the Device;
q. Voice messages;
r. Video messages; and
s. Evidence indicating the Device user's state of mind as it relates to the crimes under investigation.